1

2                                                                    HON. RICARDO S. MARTINEZ

3

4

5                          IN THE UNITED STATES DISTRICT COURT
                          FOR THE WESTERN DISTRICT OF WASHINGTON
6                                        AT SEATTLE

7    MICHAEL HALL, and ELIJAH UBER            No. C13-2160 RSM
     a/k/a Elijah Hall, and their marital
8    community; and AMIE GARRAND and          **PLAINTIFFS' RESPONSE**
     CAROL GARRAND and their marital          **TO  DEFENDANT BNSF'S**
9    community,                               **MOTION TO DISMISS**
10                           Plaintiffs,      NOTE ON MOTION CALENDAR:

11               v.                           JUNE 6, 2014

12   BNSF RAILWAY CO., a Delaware             ORAL ARGUMENT REQUESTED
     corporation,                            BY PLAINTIFFS
13
14                           Defendant.

15                      I.      INTRODUCTION AND SUMMARY

16          Michael Hall is a Burlington Northern Railway Co. (BNSF) employee who legally

17   married Elijah Uber in Washington State on January 23, 2013.  Hall sought health care coverage

18   for Eli's health costs in 2013, under a plan providing coverage for "[y]our husband or wife."

19   BNSF denied the benefit, telling Hall that "marriage is one man, one woman."  Amie Garrand is

20   a BNSF employee who married Carol Garrand in Washington in 2013 and who sought the same

21   spousal health benefit in 2013, and was denied by BNSF for the same reason.   Plaintiffs sued

22   BNSF on December 3, 2013, asserting claims under the Equal Pay Act, 29 U.S.C. § 206 (EPA),

23   alleging different pay based on sex.  See Dkt.# 1.  They claim that BNSF employees who are

24   *female* and married to a male get the benefit, but Hall did not since he was a *male* married to a

25   male; and employees who are *male* married to a female get the benefit, but Garrand did not since

26

**PLAINTIFFS' RESPONSE TO DEFENDANT**          **Cleveland Stockmeyer PLLC**
**BNSF'S MOTION TO DISMISS** - 1               8056 Sunnyside Ave. N.
                                               Seattle, WA 98103
                                               (206) 419-4385

1    she is *female* married to a female.   BNSF has yet to provide the coverage for the medical

2    benefits earned in 2013, although BNSF did belatedly provide the coverage for medical needs

3    occurring on or after January 1, 2014.  In March 2014 plaintiffs filed the First Amended

4    Complaint (FAC) (Dkt. #8), adding claims for sex discrimination under Title VII of the Civil

5    Rights Act of 1964, the Washington Law Against Discrimination (WLAD) and the Employment

6    Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq.  Now, not having answered,

7    BNSF seeks dismissal of all claims in its Motion to Dismiss (Dkt. #16, the BNSF "Motion").

8              The Court should deny BNSF's Motion.  First, plaintiffs state claims for EPA and Title

9    VII sex discrimination where an employment benefit was denied to them based on their sex.[1]

10   Plaintiffs allege that, pursuant to the express BNSF policy conditioning the benefit to those

11   complying with the BNSF view that "marriage is one man one woman," the benefit was provided

12   to *female* employees married to a male, but denied to Hall during 2013 since he was a *male*

13   married to a male; and was provided to *male* employees married to a female, but denied to

14   Garrand in 2013 because she was *female* and married to a female.  This is literally discrimination

15   based on an employee's sex that squarely fits within the prohibitions under EPA and Title VII.

16   Notably, a homosexual man married to a female would receive the benefit under BNSF's policy,

17   so the distinction is not based on sexual orientation, but on sex.   Moreover, extensive case law

18   compels the conclusion that plaintiffs state claims under Title VII.  An employer's conduct is

19   actionable where an employer imposes a disadvantage for the employee's not conforming to the

20   employer's gender stereotype.  Similarly, it is a clear violation of Title VII for the employer to

21   condition the provision of benefits on the employee's "sex plus" another factor.  Also instructive

22   are the legions of cases recognizing that an employer's conditioning benefits on the employee's

23   marrying the "right" race (in the employer's view) is race discrimination under Title VII.

24   ------------------------

25   [1] At present only Hall, not Garrand asserts a Title VII sex discrimination claim because Garrand
     does not have a right to sue letter from the EEOC yet.  Her claim may be added later.  Other

26   claims are all asserted with respect to both Hall and Garrand.

**PLAINTIFFS' RESPONSE TO DEFENDANT**          **Cleveland Stockmeyer PLLC**
**BNSF'S MOTION TO DISMISS** - 2                       8056 Sunnyside Ave. N.
                                                                        Seattle, WA 98103
                                                                        (206) 419-4385

1   Comparably, BNSF's conditioning the benefit on the employee's marrying one of the "right" sex

2   (in BNSF's view) is actionable sex discrimination under Title VII.

3       Second, since the BNSF challenged policy *is* unlawful under federal law -- the EPA and

4   Title VII -- there is no ERISA preemption of the WLAD claims.   See 29 USC § 1144(a).

5       Third, BNSF's jurisdictional attack on plaintiffs' Fifth Count fails.  BNSF claims the

6   Railway Labor Act (RLA), 45 USC § 151 requires this Count to go to railway arbitration,

7   depriving this court of jurisdiction, purportedly because these claims rest only on rights sourced

8   in the health benefit plan.  But the Fifth Count asserts claims based on rights sourced outside the

9   health plan.  These include rights under ERISA and rights recognized in *United States v.*

10  *Windsor*, 133 S. Ct. 2675, 2682 (2013), holding that federal benefits -- such as an ERISA plan --

11  may not be denied to same sex married persons when they are provided to opposite sex

12  marriages.  As a result, the Fifth Count should be heard in this court, not in arbitration.

13      Finally, BNSF alleges mootness, asserting as a fact that it is unlikely to withdraw the

14  belatedly-granted benefit going forward.  Even if that were true, this would create partial

15  mootness only, and the Court would still be left to resolve (a) all the legal claims as they relate to

16  benefits not provided during 2013, (b)  the current controversy as to whether the benefit is

17  legally required, and (c) the claims that BNSF's practice of now providing the benefit,  but doing

18  so only conditionally, represents ongoing discrimination and harm. [2]  Thus, foraying into BNSF's

19  alleged mootness defense in this Motion does not save the Court a whit of work, but only adds to

20  its and the parties' burdens.  The Court should deny this part of the BNSF motion, too.

## II.    EVIDENCE RELIED UPON

22      All files and pleadings herein.

---

24  [2] Besides claims for benefits not provided in 2013, plaintiffs allege that going forward, getting
    the benefit while being told it is not required legally makes the benefit insecure, constituting
25  ongoing discrimination causing emotional distress, which also gives rise to claims for punitive
    damages, plus claims for a declaratory judgment.

**PLAINTIFFS' RESPONSE TO DEFENDANT**       **Cleveland Stockmeyer PLLC**
**BNSF'S MOTION TO DISMISS** - 3           8056 Sunnyside Ave. N.
                                     Seattle, WA 98103
                                     (206) 419-4385

### III.   FACTS

As noted, plaintiffs are two same sex couples who married in Washington State; one in each couple is a BNSF employee who sought and was denied spousal health coverage in 2013 under BNSF's policy that the benefit must be denied because "marriage is one man, one woman."  The couples sued BNSF on December 3, 2013, asserting EPA claims.  Dkt. #1.

On March 26, 2014 they filed a First Amended Complaint (FAC), adding facts that occurred after the suit was filed and adding claims under Title VII, the WLAD, and ERISA.  See Dkt. #8, FAC ¶1 et seq.[3]  The FAC alleges BNSF provides the benefit "if the employee is a *female* married to a male spouse," but denied it to Hall, "because Michael Hall is male -- and not female."  FAC ¶¶ 1, 22, 27.   The FAC alleges BNSF provides the benefit to "males, who are married to female spouses" but denied it to Amie Garrand in 2013, "because she is *female* and not male."  FAC ¶¶ 1, 91.  Plaintiffs allege (and BNSF admits) that the plan terms state "[y]our wife or husband" shall be covered, and no language limits coverage to opposite sex couples. See *Id.* ¶90, 41, 65 and Exhibit A.   Plaintiffs allege many instances of applying for the benefit only to be told by BNSF or its agent that it would be denied because of BNSF's view,  that "marriage is between one man and one woman."  FAC ¶¶ 2, 29, 31, 32, 36, 40, 42, 53, 74-88.[4]  The FAC alleges this was "discrimination in pay or benefits based on sex."  FAC passim, and ¶ 1.  The losses for benefits denied in 2013 are tens of thousands of dollars, including $24,000 for Eli's medications, FAC ¶ 72, and costs for Carol's birthing a son.  FAC ¶74.[5]

---

[3] The FAC acknowledges that after BNSF was sued it changed its conduct and started providing the benefit but only for costs incurred after January 2014 -- not for the year 2013 costs.  As shown below, it also told plaintiffs that the coverage going forward was not legally required, making the benefit insecure and retractable.

[4] The Halls emailed BNSF's CEO and upper management, FAC ¶ 46-47, but got no response, FAC ¶50, other than a local supervisor telling Hall he would face a long and bumpy battle to get the benefit.  FAC ¶ 60.  A member of the BNSF diversity council told Hall she could not help him as trying to help him "could cost me my job."  FAC ¶ 62.

[5] Plaintiffs reserve the right to prove other damages such as premiums for other insurance.

**PLAINTIFFS' RESPONSE TO DEFENDANT**            **Cleveland Stockmeyer PLLC**
**BNSF'S MOTION TO DISMISS** - 4                     8056 Sunnyside Ave. N.
                                                                      Seattle, WA 98103
                                                                        (206) 419-4385

1    Twenty days after the suit was filed, i.e., on December 23, 2013, BNSF wrote to

2  plaintiffs stating that effective January 1, 2014, the benefits would be provided, with the caveat

3  that "[t]his is not a benefit that is required by law or under the collective bargaining agreements

4  currently in effect." FAC ¶ 92.1.  A letter of the same date from United Healthcare (BNSF's

5  agent), told the Halls it had no role in denying coverage as "[a]ll issues related to who may or not

6  be added to your policy are made entirely by your employer," BNSF.  FAC ¶ 92.3.  Plaintiffs

7  allege BNSF acted unilaterally in denying coverage, and acted as the plaintiffs' fiduciary in

8  denying the benefit.  FAC ¶ 92.4.  To date, the year 2013 health care costs have never been paid.

9  FAC ¶ 92.2, 92.5, 92.6.  Moreover, plaintiffs allege that BNSF's telling them the benefit is not

10  required legally or under any contract makes the prospect of benefits insecure, causing them

11  "distress and uncertainty" and constituting ongoing sex discrimination.  FAC ¶ 92.5.  "Benefits

12  provided as a matter of grace" (perhaps an overly charitable phrase, since BNSF had to be sued

13  for it to change its practice) are "not secure" and may be withdrawn "just when a large health

14  care cost is incurred." *Id.*  Plaintiffs also allege that BNSF's position creates an ongoing

15  controversy with BNSF as to whether the benefit is legally required or not.  FAC ¶ 92.7.[6]

16    **IV.    ARGUMENT**

17    **A.    Standards for 12(b)(6) Motions and 12(b)(1) motions**

18    BNSF's motion is under FRCP 12(b)(6) and 12(b)(1).  FRCP 12(b)(6) allows a party to

19  seek dismissal of a claim if it fails to state a claim upon which relief can be granted.  The

20  complaint must contain sufficient fact allegations that if accepted as true "state a claim for relief

21  that is plausible on its face." *Bell Atlantic Co. v. Twombley*, 550 U.S. 544, 570 (2007).  The

---

[6] See, e.g, FAC ¶ 111(noting the BNSF letter of 12/23/13 stopped damages accruing going forward, but "it did not remedy or pay plaintiffs for the past discrimination occurring in 2013, and the [BNSF] position the benefits are not legally required [for 2013 or going forward] constitutes an ongoing present controversy . . . and amounts to a threat of denial of the benefits at BNSF's discretion which is unequal pay itself and continuing discrimination."

**PLAINTIFFS' RESPONSE TO DEFENDANT**          **Cleveland Stockmeyer PLLC**
**BNSF'S MOTION TO DISMISS** - 5                      8056 Sunnyside Ave. N.
                                                                         Seattle, WA 98103
                                                                         (206) 419-4385

claim is facially plausible if the pleaded fact content "allows the court to draw the reasonable

inference that the defendant is liable. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

### B.    Plaintiff Hall States a Claim for Sex Discrimination Under Title VII

#### 1.    Discrimination Occurring Because the Employee Did Not Conform to the Employer's Gender Stereotype, Is Actionable Discrimination Because of Sex under Title VII.

In all Title VII sex discrimination cases, the ultimate issue is was the employee

discriminated against "because of such individual's . . . sex." 42 U.S.C 2000e-2(a).  It is well-

settled that these words of Title VII encompass an employee's claim that disadvantages were

imposed due to his or her not conforming to a gender stereotype held by the employer. *E.g.*,

*Price Waterhouse v. Hopkins*, 490 U.S. 228, 249-251 (1989); *Nichols v. Azteca Rest. Enters.,

Inc.*, 256 F.3d 864, 874-75 (9th Cir. 2001); *Rene v. MGM Grand Hotel, Inc.*, 305 F.3d 1061,

1064 (9th Cir. 2002) (*en banc*) (gay plaintiff victimized for gender nonconforming conduct, held

to state a claim for sex discrimination under Title VII);  *Heller v. Columbia Edgewater Country

Club*, 195 F.Supp.2d. 1212, 1223 (D.Oreg.2002) (lesbian plaintiff stated claim where she alleged

disadvantages imposed because supervisor thought she should date men, not women).

In enacting the law, Congress intended to strike at "the entire spectrum of disparate

treatment of men and women" in employment.  *Meritor Savings Bank FSB v. Vinson*, 477 U.S.

57, 64 (1986).  Thus, claims by men are actionable.  *Newport News Shipbuilding & Dry Dock

Co. v. EEOC*, 462 U.S. 669, 682 (1983).   In 1989, the Supreme Court held that disadvantages

imposed on the plaintiff for not conforming to the sex or gender stereotype held by the employer

are actionable.  *Price Waterhouse*, 490 U.S. at 249-251.  The trend of applying Title VII to the

full extent of its plain words continued in 1998, when the Court held same-sex sexual harassment

is actionable.  *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 79-80 (1998).[7]  The

---

[7]*Oncale* acknowledged Congress was not focused on same-sex sex discrimination, but Title
VII's words go beyond the principal evil to cover reasonably comparable evils, noting it is
ultimately the provisions of our laws -- the broad words of the statute -- by which we are

PLAINTIFFS' RESPONSE TO DEFENDANT
BNSF'S MOTION TO DISMISS - 6

Cleveland Stockmeyer PLLC
8056 Sunnyside Ave. N.
Seattle, WA 98103
(206) 419-4385

Court there noted the key issue is "whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id.*

Here, Hall alleges that he was exposed to disadvantageous terms of employment to which members of the other sex were not exposed, by alleging that under the BNSF marriage policy, *female* employees married to a male did get the benefit, but he did not get the benefit because he was a *male* married to a male.   Nothing more is needed to conclude that he states a claim for sex-based discrimination under Title VII.   But, there is more:  the BNSF policy that marriage is "one man, one woman," is a classic and pervasive gender stereotype that requires men to marry women, and women to marry men in order to qualify for the benefit.[8]   It is a gender conformity policy on its face:  it conditions an important employment benefit on compliance with BNSF's gender norms.   Imposing adverse terms based on gender nonconformity is actionable Title VII sex discrimination under *Price Waterhouse, Rene, Heller* and *Nichols* and other cases.

*Price Waterhouse* is instructive, involving a female accountant whose employer thought she was too "macho" and told her to act, dress and speak "more femininely." 490 U.S. at 235. Justice Brennan held that "we are beyond the day when an employer could evaluate employees by assuming or insisting that they match []the stereotypes associated with their group." *Id.* at

---

governed." 523 U.S. at 79.  Congress did not in Title VII enumerate specific practices, nor elucidate extensively the "parameter of such nefarious activities" but "pursued the path of wisdom by being unconstrictive, knowing that  . . . the seemingly reasonable practices of the present can easily become the injustices of the morrow."  *Rogers v. EEOC*, 454 F.2d 234, 238 (5th Cir. 1971), cert. denied, 406 U.S. 957 (1972).

[8] The FAC here mentions the words "gender nonconforming conduct," FAC  ¶ 114, and clearly alleges gender nonconforming conduct over and over in recounting that BNSF repeatedly denied the benefit saying "marriage is one man, one woman." Thus BNSF's claim the FAC mentions gender non conformity in passing only, is just not true.  And it does not matter anyway as there is no requirement a complaint cite precise case law where it cites Title VII, disparate treatment based on sex, and the conduct that amounts to the disparate treatment based on sex.

**PLAINTIFFS' RESPONSE TO DEFENDANT**          **Cleveland Stockmeyer PLLC**
**BNSF'S MOTION TO DISMISS** - 7                              8056 Sunnyside Ave. N.
                                                                                    Seattle, WA 98103
                                                                                    (206) 419-4385

250-51 (Brennan, J., concurring).[9]   This is exactly what BNSF allegedly has done here.  BNSF effectively told Michael Hall to "act more like a man" i.e., marry a female.

Following *Price Waterhouse,* many cases upheld the gender non-conformity claim under Title VII.[10]  In *Schwenk v. Hartford*, 204 F.3d 1187, 1201-1202 (9th Cir. 2000), the Court stated that discrimination "because one fails to act in the way expected of a man or a woman is forbidden under Title VII."   In 2001, the Ninth Circuit confirmed the gender nonconformity cause of action in *Nichols v. Azteca Rest. Enters., Inc*., 256 F.3d 864, 874-75 (9th Cir. 2001).  There, the Court held that sexual harassment because a man was viewed as acting too effeminately was actionable sex discrimination under Title VII.  The Court reaffirmed the vigor of *Price Waterhouse* and noted Title VII applies equally to a man "discriminated against for

---

[9] *City of Los Angeles Department of Water & Power v. Manhart,* 435 U.S. 702, 707 (1978), first invalidated decisions based on gender stereotype in invalidating a pension scheme based on distinctions based on sex.  There, the Court said, benefits "[d]ecisions cannot be predicated on mere 'stereotyped' impressions about the characteristics of males or females."  *Id.*

[10] *EEOC v. Boh Bros. Construction Co. LLC*, 731 F.3d 444, 449 (5th Cir. 2013) (recognizing claim by iron worker alleging harassment by all-male crew because he did not conform to supervisor's "view of how a man should act"); *Glenn v. Brumby*, 663 F.3d 1312, 1316 (11th Cir. 2011) (recognizing gender non conformity claim); *Bibby v. Philadelphia Coca Cola Bottling Co*., 260 F.3d 257, 262-63 (3d Cir. 2001); *Ballaver v. Quanex Corp*., 200 F.3d 485, 492 (7th Cir. 2000); *Doe v. City of Belleville*, 119 F.3d 563, 580-81 (7th Cir. 1997),  vacated and remanded on other grounds, 523 U.S. 1001 (1998); *Higgins v. New Balance Athletic Shoe, Inc*., 194 F.3d 252, 261 n. 4 (1st Cir. 1999) (male or female employee may claim under Title VII if discriminated against for not meeting stereotyped gender expectations); *Lindahl v. Air France*., 930 F.2d 1434, 1439 (9th Cir. 1991) (sex stereotyping is evidence of sex discrimination"); see also, *See Smith v. City of Salem, Ohio,* 378 F.3d 566, 574 (6th Cir. 2004) (sex stereotyping claim under Title VII brought by transsexual).  Other cases at the EEOC have similarly held Title VII protects lesbians or gays.  *Castello v. Postmaster General*, Request No. 0520110649, 2011 EEOPIB LEXIS 3966, December 20, 2011 (harasser of lesbian "was motivated by the sexual stereotype that having relationships with men is an essential part of being a woman"); *Veretto v. Postmaster General*, Request No. 0120110873, 2011 EEOPUB LEXIS 1973, July 1, 2011 (harasser of gay man motivated by stereotype that marrying a woman is an essential part of being a man).

**PLAINTIFFS' RESPONSE TO DEFENDANT**          **Cleveland Stockmeyer PLLC**
**BNSF'S MOTION TO DISMISS** - 8                           8056 Sunnyside Ave. N.
                                                                                        Seattle, WA 98103
                                                                                         (206) 419-4385

acting too feminine," as to a woman discriminated against for acting too masculine.  *Id.* at 874.[11]
Here, Hall states a claim under Title VII just as the plaintiff in *Nichols* did.

The Court in *Rene v. MGM Grand Hotel, Inc.*, 305 F.3d 1061, 1064 (9th Cir. 2002),
recognized the gender nonconformity claim in the case of a gay plaintiff whose all-male crew
and supervisor harassed him because of his gender nonconforming appearance.  That conduct
supported a claim for sex discrimination under Title VII.  Plaintiff Hall, like the plaintiff in *Rene*,
alleges his employer subjected him to disadvantages because of his gender nonconforming
conduct.  Notably, the status of Mr. Rene as a gay man did not defeat his Title VII claim.
Similarly, here the status of Mr. Hall as a gay man does not defeat his Title VII claim for sex
discrimination.  When gay men, as males, suffer disadvantages based on their sex, that is
actionable disparate treatment based on sex under Title VII.

In *Heller v. Columbia Edgewater Country Club*, 195 F.Supp.2d. 1212, 1223-1224
(D.Oreg.2002), the court applied the gender nonconformity analysis where a lesbian employee
alleged adverse job actions because her supervisor thought she should date men, not women.
The *Heller* court noted that the plaintiff's supervisor "would not have acted as she (allegedly) did
if Plaintiff were a man dating a woman, instead of a woman dating a woman." *Id.* at 1222-1223.
This is just what Hall alleges here; BNSF would not have acted as it did, if Hall were a man
marrying a female, rather than a male marrying a male.  *Heller* also indicates the plaintiff's status
as homosexual does not defeat the Title VII sex discrimination claim based on adverse job action
due to gender nonconforming conduct of the employee.

Moreover, the fact Michael Hall is homosexual is no more relevant to his case than was
the plaintiff's sexual orientation in *Rene* or *Heller*.  BNSF's policy was not directed at sexual
*orientation,* for it did not say "all homosexuals shall not qualify for the benefit."  Rather, the

---

[11] *Nichols* also held that sex stereotyping is actionable under the WLAD because Washington
courts look to Title VII cases as authority.  *Id.* at 875 n. 9 citing *Xieng v. People's National Bank*,
120 Wn.2d 512, 844 P.2d 389, 392 (1993).  This supports the WLAD claims here.

**PLAINTIFFS' RESPONSE TO DEFENDANT**        **Cleveland Stockmeyer PLLC**
**BNSF'S MOTION TO DISMISS** - 9                8056 Sunnyside Ave. N.
                                                Seattle, WA 98103
                                                (206) 419-4385

policy framed denial of the benefit only in terms of gender.  Under BNSF's stated policy, a gay man married to a heterosexual woman would still be homosexual but would receive the benefit. Thus, the policy is based on sex, not sexual orientation.  Alleging denial of a significant employment benefit based on his sex, Hall has adequately alleged "discrimination because of [Hall's] . . . sex," and under *Price Waterhouse, Rene, Nichols* and *Heller* and many other cases, his claim is viable under Title VII -- regardless of his sexual orientation.[12]

### 2.    "Sex Plus" Cases and Inter-Racial Marriage Cases

Conditioning employment benefits on "sex plus another factor" is actionable sex discrimination under Title VII.  In *Phillips v. Martin Marietta Corp.*, 400 U.S. 542, 544-545 (1971), the employer denied employment to females who had pre-school-aged children.  In *Sprogis v. United Air lines, Inc.* 444 F.2d 1194, 1198-99 (7th Cir. 1971), the employer required female employees not to marry.  In *Frank v. United Airlines*, 216 F.3d 845, 854 (9th Cir. 2000), the employer put a weight limit on female employees.  Each case recognized this kind of sex-plus policy violates Title VII's ban on sex discrimination.  Here, BNSF had a sex-plus policy: it conditioned the benefit based on sex (*e.g.*, being male) plus other conduct (marrying a female, not a male).  As with the marriage-related sex plus policies in *Philips* and *Sprogis*, BNSF's sex plus policy alleged here is actionable under Title VII.

Many cases hold that policies against interracial marriage, or conditioning an employment benefit on the employee marrying a certain race only, constitute discrimination under Title VII that is based on the race of the employee.  *E.g.*, *Barrett v. Whirlpool Corp.*, 56 F.3d 502 (6th Cir. 2009).[13]  Even discrimination premised upon an employee's associating with

---

[12] As noted, Amie Garrand has not yet pleaded her Title VII claim here, but if she does, all the authority supporting Michael Hall's claim supports her claim, too.

[13] See *Floyd v. Amite County Sch. Dist.*, 581 F.3d 244, 250 (5th Cir. 2009); *Holcomb v. Iona College*, 521 F.3d 130, 138-39 (2d Cir. 2008); *Deffenbaugh-Williams v. Wal-Mart Stores*, 156 F.3d 581, 588-89 (5th Cir. 1998); *Stacks v. Southwestern Bell Yellow Pages, Inc.*, 27 F.3d 1316, 1327 n.6 (8th Cir. 1994); *Parr v. Woodmen of the World Life Ins. Co.*, 791 F.2d 888, 891-92 (11th Cir. 1986); *Sperling v. United States*, 515 F.2d 465, 484 (3d Cir. 1975), *cert. denied*, 426

---

**PLAINTIFFS' RESPONSE TO DEFENDANT
BNSF'S MOTION TO DISMISS** - 10

**Cleveland Stockmeyer PLLC**
8056 Sunnyside Ave. N.
Seattle, WA 98103
(206) 419-4385

the "wrong race" is prohibited under Title VII.  *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1118 (9th Cir. 2004) (having "black friends or coworkers"); *Holcomb v. Iona College*, 521 F.3d 130, 138 (2d Cir. 2008) (where the employee suffers because employer "disapproves of [his or her] interracial association," this is "discrimination because of the employee's own race"); *Reiter v. Center Consol. School Dist.*, 618 F. Supp. 1458, 1460 (D. Colo. 1985) (plaintiff had association with "Spanish citizens").  As the court stated in *Gresham v. Waffle House, Inc.*, 586 F. Supp. 1442, 1445 (N.D. Ga. 1984), "but for their being white, the plaintiffs in these cases would not have been discriminated against.  This Court cannot imagine what more need be alleged to bring such plaintiffs within the plain meaning of Title VII's proscription of discrimination against an individual 'because of such individual's race.'"

The same logic applies here.  BNSF had a rule imposing a job disadvantage for employees marrying a person of the "wrong sex," just like the above cited cases involved employer practices imposing adverse terms for the employee marrying a person of the "wrong race."  BNSF's marital sex policy must be actionable sex discrimination, if employer's marital sex policies are actionable race discrimination.  Title VII treats race and sex the same way, *Price Waterhouse*, 490 U.S. at 243 n. 9, so it makes sense to harmonize standards concerning race and sex discrimination in Title VII.  *Faragher v. City of Boca Rat*on, 524 U.S. 775, 787 n. 1 (1998).  If BNSF denied the benefit because Hall as a Caucasian had married an African American, there would be no doubt that would be race discrimination under Title VII.  There is equally no doubt that conditioning the benefit on Hall's marrying a female, is sex discrimination under Title VII.

### 3.    BNSF's Arguments Have No Merit

---

U.S. 919 (1976); *Chacon v. Ochs*, 780 F. Supp. 680 (C.D. Cal. 1991); *Whitney v. Greater N.Y. Corp. of Seventh Day Adventists*, 401 F. Supp. 1363, 1366 (S.D.N.Y. 1975); *Gresham v. Waffle House, Inc*., 586 F. Supp. 1442, 1445 (N.D. Ga. 1984); *Holiday v. Belle's Restaurant*, 409 F. Supp. 904 (W.D. Pa. 1976).  Every case in the last 30 years to consider race-relational discrimination has held it to be actionable under Title VII.  Victoria Schwartz, *Title VII: A Shift From Sex to Relationships*, 35 Harvard Journal of Law & Gender 209, 246 (Jan. 2012).

PLAINTIFFS' RESPONSE TO DEFENDANT          **Cleveland Stockmeyer PLLC**
BNSF'S MOTION TO DISMISS - 11                       8056 Sunnyside Ave. N.
                                                                      Seattle, WA 98103
                                                                      (206) 419-4385

1    BNSF weaves into its Motion varied arguments, but none have merit.  BNSF in effect

2    tries to argue that somehow plaintiff Hall's sexual orientation deprives him of a Title VII claim.

3    The Court should reject this argument.  Case law makes clear that being homosexual does not

4    deprive one of a sex discrimination claim for adverse conditions imposed due to gender

5    nonconformity, as shown in *Rene* and *Heller.* In *Rene* an argument like the one made by BNSF

6    here worked at the trial court level; that court had ruled for the MGM Hotel defendant on the

7    ground that plaintiff suffered harassment because he was gay.  The Ninth Circuit reversed and

8    said his sexual orientation was "*simply irrelevant*" and "[w]hatever else those attacks may, or

9    may not, have been 'because of' has no legal consequence" when they were allegedly due to his

10   sex.  *Rene,* at 1066 (emphasis added).[14]  Hall's sexual orientation here is just as irrelevant.  *Smith*

11   *v. City of Salem, Ohio,* 378 F.3d 566, 574 (6th Cir. 2004) held an employer may not legitimize

12   discrimination for failure to conform to sex stereotypes by pointing to the sexual identity of the

13   plaintiff as a transsexual as the reason for the discrimination.  Here, BNSF may not point to

14   Hall's orientation as a homosexual to legitimize its sex-based discrimination.

15   BNSF cites *DeSantis v. Pacific Telephone & Telegraph Co., Inc.*, 608 F.2d 327 (9th Cir.

16   1979) to argue that somehow Hall loses Title VII protection because of his sexual orientation.

17   BNSF Motion at 3, 9 and 10.  But the Court in *Nichols* said this prior case law, holding Title VII

18   does not protect the effeminate male who alleges sex stereotyping, "is no longer good law."

19   *Nichols*, 256 F.3d at 875, *abrogating DeSantis v. Pacific Telephone & Telegraph Co., Inc.*, 608

20   F.2d 3x27 (9th Cir. 1979).  BNSF also cites *Holloway v. Arthur Andersen & Co.*, 566 F.2d 659,

21   661-63 (9th Cir. 1977).  This case holds Title VII does not protect a transsexual.  *Holloway* is

22   also no longer good law.  The Ninth Circuit has recognized that the *Holloway* holding, refusing

---

[14] BNSF quotes this case out of context.  The Court was saying that a gay sexual orientation is irrelevant *to defeat* a claim for sex discrimination by a gay man under Title VII where he alleges gender nonconformity discrimination.  That is what Hall alleges here.  Hall's sexual orientation is similarly irrelevant to defeat his Title VII claim here, but BNSF has made his gay sexual orientation the entire basis of its argument under Title VII.

**PLAINTIFFS' RESPONSE TO DEFENDANT**         **Cleveland Stockmeyer PLLC**
**BNSF'S MOTION TO DISMISS** - 12                        8056 Sunnyside Ave. N.
                                                                                  Seattle, WA 98103
                                                                                  (206) 419-4385

to extend Title VII to transsexuals because discrimination against transsexuals is on basis of gender rather than "sex," was overruled by *Price Waterhouse*.   *Schwenk*, 204 F.3d at 1201-02. See also *Smith v. City of Salem, Ohio*, 378 F.3d 566, 572 (6th Cir. 2004) (where district court rejected the gender nonconformity claim of transsexual, saying Title VII does not prohibit discrimination based on an individual's transsexualism, Court of Appeals held that *Price Waterhouse* makes prior law saying that Title VII does not protect transsexuals no longer good law, citing *Ulane v. Eastern Airlines Inc*. 742 F.2d 1081, 1085 (7th Cir. 1984) and *Holloway v. Arthur Andersen & Co*., 566 F.2d 659, 661-63 (9th Cir. 1977)).

BNSF also attempts to legitimize its discriminatory conduct by arguing it allegedly practices sex-discriminated against both *some* men and *some* women.  This manner of bootstrapping oneself out of Title VII liability does not work.  Here the FAC alleges that Hall compared to females was disadvantaged because of his sex, when not all males were because most males marry a female.  Garrand alleges that she, compared to males, was disadvantaged because of her sex, when not all females were, because most marry a male.  Therefore, both allege sex discrimination.  *Loving v. Virgina*, 388 U.S. 1, 8 (1967) rejected the notion that one shows equal treatment by discriminating against some blacks and some whites. The Court struck down a ban on interracial marriage under equal protection, even though Virginia's law on its face banned interracial marriage equally for all races.  The BNSF policy here is similar; it discriminates against some men and some women, based on sex, but does not work against all men or all women since most do not marry or if they do, do not engage in opposite sex marriage. This kind of discrimination not affecting the whole gender group suffices under Title VII, which refers to discrimination against "such individual."  The Title VII focus is discrimination against an *individual* because of sex.  *Manhart*, 435 U.S. at 708.  One need not show that all females or all males are victimized, only that the plaintiff was.  *Meritor*, 477 U.S. at 66-67; *see Phillips*, 400 U.S. at 543.  In *Rene*, the Court held that the gay male plaintiff only had to show he was

treated worse than other men. *Rene,* 305 F.3d at 1067.   Hall shows this by alleging being treated

worse than men who marry women.  The *Heller* court perhaps said it best; finding Title VII was

violated despite the supervisor's harassing gay men and the lesbian plaintiff, it said to rule

otherwise would mean "a bisexual manager would be immune from liability so long as he

demanded sexual favors from men and women alike." *Heller*, 195 F.Supp.2d at n. 10.  Here,

BNSF's "equal opportunity discriminator" status is no defense for the same reason.  Hall and

Garrand both allege they were treated worse than others due to their sex. *More discrimination*

*based on sex* does not legitimize discrimination based on sex.

Finally, BNSF makes much of the argument that Congress has not enacted an amendment

that adds sexual orientation to Title VII.  The fact that existing statutes and the courts'

interpretation of those statutes address the issues of gays and lesbians makes Congressional

inaction irrelevant to this case.  As noted above, decisions under Title VII are governed by the

words Congress enacted, which strike at the entire spectrum of disparate treatment based on sex.

*Meritor,* 477 U.S. at 64.  Congress in 1964 was not principally focused on same-sex sex

discrimination, but the words it enacted were intended to cover it because they are written to go

beyond the principal evils aimed at to cover comparable evils. *Oncale,* 523 U.S. at 79.  Congress

in not listing specific discriminatory practices intended that Title VII be applied where its words

provided relief. *Rogers v. EEOC,* 454 F.2d 234, 238 (5th Cir. 1971), cert. denied, 406 U.S. 957

(1972).  Notably, the Supreme Court has stated that it is hazardous to infer intent of an earlier

Congress from inaction in a later Congress. *Pension Ben. Guar. Corp. v. LTV Corp.*, 496 U.S.

633, 650 (1990); *Zuber v. Allen*, 396 U.S. 168, 185 n. 21 (1969) ("treacherous" to interpret based

on Congressional inaction); *Chisolm v. FCC*, 538 F.2d 349, 361 (D.C. Cir. 1976) ("dangerous"

to infer from Congressional inaction).

In sum, Hall passes the crucial test, which is merely whether he would have been

subjected to the adverse treatment had he been of the opposite sex.  He alleges he would not have

**PLAINTIFFS' RESPONSE TO DEFENDANT**  **Cleveland Stockmeyer PLLC**
**BNSF'S MOTION TO DISMISS** - 14    8056 Sunnyside Ave. N.
                   Seattle, WA 98103
                  (206) 419-4385

1    been, and under the BNSF policy he would not have been.  This is a sex-based policy that

2    violates Title VII on its face.  Hall alleges a classic gender nonconformity claim, and under *Rene*,

3    *Heller* and *Price Waterhouse* he states a claim under Title VII for sex discrimination.  That the

4    BNSF policy ultimately may be rooted in revulsion for same sex marriage, or homosexuals, is

5    irrelevant where the policy immediately triggers denial of the benefit based on the employee's

6    sex.  As noted above, the BNSF policy turns on sex, and the allegation that benefits were denied

7    under that policy states a claim for Title VII disparate treatment based on sex.[15]  The motion to

8    dismiss the Title VII claim should be denied.

9           **C.      Equal Pay Act Claims**

10          The EPA prohibits discrimination in compensation "on the basis of sex."  20 USC §

11   206(d)(1).   Michael Hall and Amie Garrand allege EPA claims.  FAC ¶¶ 93-111.  Here,

12   plaintiffs properly state claims under the EPA, by alleging that BNSF denied the benefit to Hall,

13   a male, while providing the benefit to married *female* employees in similar situations in his

14   workplace; and that BNSF denied the benefit to Garrand, a female, while providing the benefit to

15   married *male* employees in similar situations in her workplace.  This is discrimination in

16   compensation that is "on the basis of sex" and is actionable under the EPA.   BNSF admits that

17   the EPA is coextensive with Title VII's ban on sex discrimination.  BNSF Motion at 12, line 16

18   citing *DeCintio v. Westchester County Medical Center*, 807 F.2d 304, 308 (2d Cir. 1986).  Here,

19   having shown the discrimination to be actionable under Title VII, it is also shown to be

20   actionable under the EPA.[16]  While BNSF again tries to bootstrap itself into legitimacy by noting

21

22   [15]  Title VII has been amended; it is violated if a covered trait "[w]as a motivating factor for any

23   employment practice, even though other factors also motivated the practice."  42 U.S.C. §200d-
     2(m).  Thus, even if Hall's sexual orientation was a motivating factor, since he alleges his sex

24   was at least "a" motivating factor, too, he states a claim under Title VII.  This amendment
     demolishes much of BNSF's argument about his sexual orientation.

25   [16] Notably, the EPA itself lists exceptions and a proviso defense, relating to things such as
     seniority, merit pay, and the like.  See §206(d)(1), quoted at BNSF Motion, n. 4.  There is no

26   exception listed for the sexual orientation of the plaintiff.  Thus, Congress did not intend for the

**PLAINTIFFS' RESPONSE TO DEFENDANT**             **Cleveland Stockmeyer PLLC**
**BNSF'S MOTION TO DISMISS** - 15                 8056 Sunnyside Ave. N.
                                                  Seattle, WA 98103
                                                  (206) 419-4385

1   its alleged policy hurts both some men and some women, this only shows that the policy does

2   impose lesser compensation on some men, and on some women, on the basis of their sex.  BNSF

3   also argues that plaintiffs allege sexual orientation discrimination, that "homosexual men were

4   compensated less than heterosexual women, and homosexual women were compensated less that

5   heterosexual men."  BNSF Motion at 13, lines 30-34.  But the allegation is that the men were

6   compensated less than women because of their sex, and the women were compensated less than

7   the men because of their sex.  Again, more violations of the EPA do not immunize BNSF for

8   violating the EPA.  And BNSF is wrong.  The allegation is not that plaintiffs received less

9   compensation just because of being gay or lesbian:  Hall and Garrand were gay and lesbian

10  (respectively) before they got married and did not get less compensation based on their sexual

11  orientation.  However, they got less compensation based on their sex (less than members of the

12  opposite sex), when each married contrary to the BNSF sex-based marriage rule.  Hall alleges he

13  got less in benefits than females married to males in his workplace, and Garrand alleges she got

14  less in benefits than males married to females in her workplace.  They both allege claims under

15  the EPA because each allegedly received less compensation on the basis of their sex.

16         **D.**    **The WLAD Claim is Not Preempted**

17         Plaintiffs assert claims for disparate treatment based on sex under the WLAD.  FAC ¶¶

18  119-122.  BNSF admits that a state antidiscrimination law is preempted under ERISA only to the

19  extent it seeks to prohibit conduct that is *not illegal* under federal law.  BNSF Motion at 15,

20  citing *Shaw v. Delta Airlines*, 463 U.S. 85 (1983).  As shown above, the conduct challenged here

21  *is* illegal under federal law, including Title VII and the EPA.  Therefore the WLAD claim is not

22  preempted in that it challenges the BNSF marriage rule applied to deny benefits here.  The thrust

23  of BNSF's argument is again that somehow the alleged discrimination was based on sexual

24

25  male homosexual plaintiff who has an EPA claim to be deprived of it based on his sexual
    orientation.  The same is true of the lesbian plaintiff with an EPA claim.

26

**PLAINTIFFS' RESPONSE TO DEFENDANT**       **Cleveland Stockmeyer PLLC**
**BNSF'S MOTION TO DISMISS** - 16       8056 Sunnyside Ave. N.
       Seattle, WA 98103
       (206) 419-4385

orientation, not sex.  As noted extensively above, the discrimination they allege is  based on sex,

BNSF's conduct is unlawful under Title VII and the EPA and there is no preemption of the

WLAD claims challenging the same conduct.[17]

**E.     BNSF's RLA Jurisdictional Challenge Fails.**

BNSF argues that plaintiffs' claims in their Fifth Count may not be heard in this court,

and must go to railroad arbitration, based upon the assertion that such claims are rooted solely in

collectively-bargained terms (the words "husband" and "wife" in the health plan); and §3 of the

Railway Labor Act (RLA), 45 USC §151 et seq., makes such disputes over collectively

bargained terms subject to RLA arbitration.  BNSF Motion at 4, 17-20.[18]   However, the premise

of this argument -- that the claims are all rooted only in the meaning of plan terms -- fails.  In

fact, the claims in the Fifth Count have three bases independent from and outside of the plan.

As background, *Consolidated Rail Corp. v. RLEA*, 491 U.S. 302-307 (1989) established

that claims that are rooted in railroad collective bargaining agreement (CBA) terms alone are

characterized as major or minor; and further, that changes in contract terms are major disputes

and go to RLA mediation, while issues of enforcement of extant contracts rights or arguably

existing rights are minor disputes that go to RLA arbitration.  However claims based on

independent statutory rights or rights sourced outside the terms of a CBA (or a plan pursuant to a

CBA), do not go to mediation or arbitration, but "go directly to court." *ALPA v. Northwest*

---

[17] 42 U.S.C. §200d-2(m) states that Title VII violated if any covered trait "[w]as a motivating factor" though "other factors also motivated the practice."  Thus, even if the sexual orientation of plaintiffs was "a" factor motivating BNSF's denial of benefits  -- something BNSF would have to prove with evidence and which it has not shown in its Motion -- the conduct was still illegal under Title VII because the employee's sex was allegedly also "a" factor in BNSF's denying the benefit.  This means there is no preemption of the WLAD claims.

[18] Plaintiffs allege claims under ERISA for BNSF's violation of the fiduciary duty to provide the benefit.  FAC ¶¶123-131.  Plaintiffs sued *BNSF and not the plan* asserting that BNSF caused the denial of the benefits acting as "administrator or fiduciary operating the plan," FAC ¶ 126.  They seek the unpaid benefits for 2013, fees and costs, a judgment declaring the benefit is required and directing BNSF to cease directing it not be paid and "cease interfering in the plan's provision of such benefits."  FAC ¶ 131.

1 *Airlines*, Inc., 627 F.2d 272, 277 (D.C. Cir. 1980) (when complaint states a statutory claim under

2 ERISA independent of the correct construction of the plan, federal court has jurisdiction).[19]

3 BNSF concedes this, noting its RLA jurisdictional argument only applies to plaintiffs' claims

4 that turn "solely on interpretation of the [plan] terms 'husband' or 'wife,'" and that its

5 jurisdictional argument does not apply to claims independently based on a source of rights

6 outside the CBA-derived plan.  BNSF Motion at 20, ll. 8-25, quoting *Pearson v. Northwest*

7 *Airlines*, 659 F.Supp.2d 1084,1092-1093 (C.D.Cal. 2009) and *Long v. Flying Tiger*, 994 F.2d

8 692, 695 (9th Cir. 1993).   BNSF also admits that claims outside the RLA arbitration mandate

9 include those for interference with vested rights under ERISA § 510 or "a breach of fiduciary

10 obligations."  BNSF Motion at 20, *citing Long*, 994 F.2d at 695.

11      Here, BNSF simply fails to note that the Fifth Count has claims rooted in rights outside

12 of the terms of the plan. Two of these rights are found in ERISA and concern interference and

13 breach of fiduciary duty.  A third is found in a higher law, the United States Constitution.

14      **1.**     **Independent statutory claims rooted in ERISA.**

15      ERISA §510 (29 USC § 1140) makes unlawful *any* person's *interfering with* or

16 *discriminating against* one seeking attainment of rights under a plan.[20]  Plaintiffs' claims in the

17 Fifth Count include claims against BNSF -- which is not the plan entity itself -- for *interfering*

18 *with* plaintiff's attainment of the spousal benefit provided in the plan. See, *e.g.*, FAC ¶ 126, 131.

19 Indeed, the FAC seeks an injunction ordering BNSF to stop its "interfering."  *Id.*; prayer for

20 relief, ¶ 2.   The remainder of the FAC explains how this interference happened:  upon marriage,

21 Eli became the husband of Michael, and Carol became the wife of Amie; the employees Michael

---

22 [19] An arbitrator's "source of authority is the CBA" and he or she has "no authority to invoke

23 public laws that conflict" with it.  *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 53 (1974).
The arbitrator's authority is only to resolve questions of contractual rights.  *Id.* at 53-54.

24 [20] This section makes it unlawful for "any person to discharge, fine, suspend, expel, discipline, or
discriminate against a participant or beneficiary for exercising any right to which he is entitled

25 under the provisions of an employee benefit plan,  …or for the purpose of interfering with

26 the  attainment of any right to which such participant may become entitled under the plan."

---

**PLAINTIFFS' RESPONSE TO DEFENDANT**
**BNSF'S MOTION TO DISMISS** - 18

**Cleveland Stockmeyer PLLC**
8056 Sunnyside Ave. N.
Seattle, WA 98103
(206) 419-4385

1   Hall and Amie Garrand then had attained vested rights to coverage under the plan providing the

2   benefit to "[y]our husband or wife"; but then BNSF interfered with this benefit by unilaterally

3   imposing its view that marriage is "one man, one woman" -- even though this limitation appears

4   nowhere in the plan.  The FAC unquestionably includes the claim that BNSF discriminated

5   against plaintiffs when they sought the benefits.  Thus, the Fifth Count has claims for

6   interference and discrimination under ERISA § 510 that are rooted in statutory rights not solely

7   in the plan.  *Ergo*, these claims are outside the purview of mandatory RLA arbitration and may

8   be heard immediately in federal court.

9       Second, plaintiffs also allege a breach of fiduciary duty under ERISA.  ERISA provides

10  that one is a fiduciary if he has discretionary authority or discretionary responsibility in the

11  administration of such plan. 29 U.S.C. § 1002(21)(A)(iii).   The "linchpin of fiduciary status

12  under ERISA is discretion." *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 233 (3rd

13  Cir. 1994).  Under ERISA, 29 U.S.C. § 1104(a)(1)(A)(i), the fiduciary shall discharge his duties

14  "solely in the interest of the participants and beneficiaries and for the exclusive purpose of

15  providing benefits."[21]  The FAC expressly alleges BNSF was "acting as … [a] fiduciary"

16  responsible for the denial of the benefit.  FAC ¶ 126.  The FAC also alleges BNSF was a

17  fiduciary by alleging repeatedly it was responsible for the denial -- telling plaintiffs over and

18  over they did not meet the BNSF view of marriage as "one man, one woman."  This is an

19  allegation that BNSF exercised control over the plan and had *de facto* discretion to deny the

20  benefit.  The FAC alleges that after it got sued, BNSF decided to provide the benefit and the

21  United Healthcare letter confirms this.   FAC ¶ 128.  Again, this is an allegation of the exercise

22  of discretion that makes BNSF a fiduciary under ERISA.  *Curcio,* 33 F.3d at 233.   Finally, the

23  plaintiffs allege that BNSF denied the benefit maliciously and intentionally, FAC ¶ 125, to serve

24

25  [21] ERISA defines the "term 'employee benefit plan' as including both pension plans and welfare
    plans." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90-91 (1983). "It also sets various uniform

26  standards, including…fiduciary responsibility, for both pension and welfare plans." *Id.* at 91.

**PLAINTIFFS' RESPONSE TO DEFENDANT**          **Cleveland Stockmeyer PLLC**
**BNSF'S MOTION TO DISMISS** - 19               8056 Sunnyside Ave. N.
                                                Seattle, WA 98103
                                                (206) 419-4385

its own definition of marriage, which appears nowhere in the plan.  Clearly BNSF was seeking to further its own interest (imposing its definition of marriage) rather than discharging its fiduciary duty solely in the interest of the plan beneficiaries or for the exclusive purpose of providing benefits as required in 29 U.S.C. § 1104(a)(1)(A)(i).  The FAC alleges, in short, BNSF imposed a unilateral bigoted view of marriage not contained in the plan, rewrote the plan terms, and put its interest ahead of the beneficiaries' interests.  This claim, for breach of fiduciary duty, is rooted in ERISA sections outside the terms of the plan, and is not subject to RLA arbitration but is heard in federal court, as BNSF admits.  BNSF Motion at 20, *citing Long*, 994 F.2d at 695.

### 2.   Independent Constitutional protections.

The United States Constitution's Equal Protection guarantees require that no federal law or program benefits be denied to same sex marriages if granted to opposite sex married couples. *United States v. Windsor*, 133 S. Ct. 2675, 2682 (2013).  *Windsor* struck down Section 3 of the Defense of Marriage Act (DOMA), a law much like the BNSF view of marriage challenged here. DOMA defined marriage in the federal dictionary act as being "only a legal union between one man and one woman" and also provided that spouse means only a "husband or a wife" of the opposite sex.  *Windsor*, 133 S. Ct. at 2682.  This definition affected "over 1,000 federal laws in which marital or spousal status is addressed as a matter of federal law," such as ERISA plans which receive special tax benefits under federal tax law.  *Id.*, 2682, 2696.  The unpublished decision in *Cozen O'Connor v. Tobits*, No. 11-00045, 2013 WL 3878688, at 11-12  (E.D. Pa. July 29, 2013) illustrates how *Windsor* impacts the present case, even if not deemed persuasive authority.  In *Tobits*, a law firm interpleaded the same sex spouse of a deceased employee and other relatives of the employee who claimed the spousal death benefit under the firm's ERISA-qualified benefit plan.  The court held that the same-sex spouse should be recognized as a spouse under the law and should receive the benefit, noting that "*Windsor* makes clear that where a state has recognized a marriage as valid, the United States Constitution requires that the federal laws

PLAINTIFFS' RESPONSE TO DEFENDANT
BNSF'S MOTION TO DISMISS - 20

**Cleveland Stockmeyer PLLC**
8056 Sunnyside Ave. N.
Seattle, WA 98103
(206) 419-4385

1   and regulation of this country acknowledge that marriage."  The *Tobits* court found that an

2   ERISA plan designed to receive federal tax benefits could not define "marriage" or "spouse" so

3   as to exclude a legal, same-sex married spouse.  *Tobits*, 2013 WL 3878688, at 10.

4         Here, *Windsor* for the same reason means that this ERISA benefit plan providing benefits

5   to "[y]our husband or wife" may not be applied to deny the benefit to plaintiffs where they were

6   legally married under state law.  As applied in *Windsor,* Michael Hall and Amie Garand here

7   enjoy a substantive protection in the U.S. constitution, that is outside the plan, and that would

8   override the terms of the plan if it expressly were limited to opposite sex marriage -- or if some

9   RLA arbitration board interpreted it that way.  Because the plaintiffs have an independent

10  substantive right on which to base their ERISA-related claim for benefits, one derived outside of

11  the CBA process or CBA-derived plan, the RLA does not deprive this Court of jurisdiction.

12        Finally, claims about fact issues as to an employer's motives or conduct are heard in

13  court, not RLA arbitration.  *Sturge v. Northwest Airlines, Inc.*, 658 F.3d 832, 837 (8th Cir. 2011)

14  (citing *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 261 (1994).  The Fifth Count alleges

15  BNSF violation of fiduciary duty and malicious interference and discrimination.  At issue are

16  BNSF's motives and conduct in trying to impose its bigoted views on a plan that by its express

17  terms provided the benefit plaintiffs had sought.  BNSF at no time claimed that Eli was not

18  Michael's "husband" or that Carol was not Amie's "wife" -- conceding that no factual issues

19  barred them from receiving benefits under the plan.  Even in its Motion, BNSF adduces no

20  evidence that it and the unions ever negotiated as to any limitation on the terms "husband or

21  wife" that would make them mean anything less than a husband or wife under state law.[22]

22  _____

23  [22] There were sixteen states with anti-miscegenation laws when *Loving v. Virginia*, 388 U.S. 1
    (1967) put an end to such laws.  BNSF has provided no evidence which suggests that when this
24  happened, it had to meet with unions, then negotiate new coverage for its CBA derived plans to
    allow them to cover a husband or wife in an interracial marriage.  There is simply no evidence
25  that at any time "husband" and "wife" were ever thought to mean anything but a husband or wife
    under State marriage law.
26

**PLAINTIFFS' RESPONSE TO DEFENDANT**          **Cleveland Stockmeyer PLLC**
**BNSF'S MOTION TO DISMISS** - 21                       8056 Sunnyside Ave. N.
                                                                    Seattle, WA 98103
                                                                     (206) 419-4385

1    States have changed marriage laws a great deal in the last decades; BNSF has no evidence that

2    with each change (say, in enacting no-fault or changing the age of consent) it "negotiated" new

3    CBA terms or interpretations of "husband or wife" to conform to state law.  In reality, then, the

4    status of husband or wife is a factual issue of compliance with state law -- not an issue of plan

5    interpretation.   Thus, the claims that BNSF prevented the benefits from being provided are

6    claims about BNSF's conduct and motives that are outside of RLA arbitration process.

7          In sum, many claims in the Fifth Count are outside the scope of the RLA and its

8    provisions denying federal court jurisdiction in certain cases.  This court should hear those

9    claims in the Fifth Count that are sourced in rights outside the plan or that relate to BNSF

10    motives and conduct.  This part of the BNSF motion should be denied.

           **F.**      **The Mootness Arguments in BNSF's Motion Should Be Rejected**

11

12          The FAC seeks in each count damages incurred in the past and those being incurred

13    going forward, penalties,  attorneys fees, costs, declaratory relief, plus an order enjoining BNSF

14    to provide the benefit "as a matter of right, and [to] cease interfering with payment of said

15    benefits." *See* FAC ¶ 1 and prayer for relief, ¶ 1-2.   BNSF's Motion at 21-23 argues that some

16    of these claims  -- only those that are for prospective relief – should be dismissed as moot

17    because the coverage has been provided starting January 1, 2014.  This argument falls short in

18    many regards.  BNSF does not deny that the significant lost benefits accrued in the year 2013

19    have not ever been provided.  Thus, the court will have to resolve the claims insofar as they

20    relate to past benefits.  The same analysis will determine if the benefits are legally required going

21    forward.  Therefore, no economy is gained by considering  BNSF's mootness argument.

22          BNSF's position that the benefit is not legally required leaves the plaintiffs insecure as to

23    whether the benefit will one day be withdrawn.  Thus, a current controversy requiring resolution

24    exists as to whether the benefit is legally required, so there is nothing to be gained by delving

25    into the mootness arguments and alleged facts as to the likelihood future or ongoing benefits will

26

**PLAINTIFFS' RESPONSE TO DEFENDANT**      **Cleveland Stockmeyer PLLC**
**BNSF'S MOTION TO DISMISS** - 22           8056 Sunnyside Ave. N.
                                          Seattle, WA 98103
                                          (206) 419-4385

1  be withdrawn or not.  Moreover, plaintiffs suffer from continued discrimination by BNSF's

2  telling them the benefit is not legally required under any extant CBA.  Opposite sex couples are

3  not told this.  This continued discrimination is causing ongoing harm and emotional distress, as

4  plaintiffs allege, and the existence of those claims defeats the mootness defense.[23]

5          Also, BNSF's argument fails for lack of proof.  One claiming that its voluntary cessation

6  moots a case bears the formidable burden of showing it is absolutely clear the wrongful behavior

7  could not reasonably be expected to recur. *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 727 (2013)

8  (citation omitted).[24]  BNSF cites the Gradia Decl. at ¶¶16-19, to show it may not unilaterally

9  change the coverage, BNSF Motion at 22.  But BNSF provides zero evidence from the unions.

10 BNSF simply asks this court to assume, without evidence, that unions plus BNSF will not

11 bilaterally change course in the future.  This is hardly reassuring where in the past, if what BNSF

12 says is true, it was BNSF plus other railroads plus unions that discriminated against plaintiffs

13 because of sex and who stopped it only after BNSF got sued.  Notably, there is *no binding*

14 *agreement here that the conduct may not recur,* as in cases cited in BNSF Motion at 22.  What is

15 shown here is the challenged conduct may reoccur, bilaterally.  Thus, there is not even a showing

16 of limited mootness here.  The mootness defense should be rejected.

                              **V.    CONCLUSION**

17          For the foregoing reasons, the Court should deny the BNSF Motion in its entirety.

18          DATED this 2d day of June, 2013.

---

21 [23] See, e.g, FAC ¶ 111 (BNSF letter of 12/23/13 stopped certain damages going forward, but did
22 not remedy or pay for discrimination in 2013 and since the change in conduct came with the
23 statement that "benefits are not legally required" this makes plaintiffs insecure and is continuing
   discrimination and harm, presenting a "present controversy" requiring a declaratory judgment.)
   [24] Normally "voluntary cessation" of the discrimination "does not deprive" this Court of "power
24 to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle*, 455 U.S. 283, 289
   (1982).  This is because "a defendant could engage in unlawful conduct, stop when sued to have
25 the case declared moot, then pick up where he left off, repeating this cycle until he achieves all
26 his unlawful ends." *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 727 (2013).

**PLAINTIFFS' RESPONSE TO DEFENDANT**          **Cleveland Stockmeyer PLLC**
**BNSF'S MOTION TO DISMISS** - 23                         8056 Sunnyside Ave. N.
                                                                      Seattle, WA 98103
                                                                       (206) 419-4385

**CLEVELAND STOCKMEYER PLLC**

By:      s/Cleveland Stockmeyer
         Cleveland Stockmeyer, WSBA No. 21636
8056 Sunnyside Avenue North
Seattle, WA 98103
Telephone: (206) 419-4385
E-mail: cleve@clevelandstockmeyer.com

and

**BADGLEY MULLINS TURNER PLLC**

By:      s/Duncan C. Turner
         Duncan C. Turner, WSBA No. 20596

         s/Daniel Andrew Rogers
         Daniel Andrew Rogers,
         WSBA No. 46372


19929 Ballinger Way Suite 200
Shoreline, WA 98155
Telephone: (206) 621-6566
Facsimile: (206) 621-9686
E-mail: duncanturner@badgleymullins.com
**Attorneys for Plaintiffs**

**PLAINTIFFS' RESPONSE TO DEFENDANT
BNSF'S MOTION TO DISMISS** - 24

**Cleveland Stockmeyer PLLC**
8056 Sunnyside Ave. N.
Seattle, WA 98103
(206) 419-4385

**CERTIFICATE OF SERVICE**


I hereby certify under penalty of perjury that a true and correct copy of **PLAINTIFFS'**

**RESPONSE TO DEFENDANT BNSF'S  MOTION TO DISMISS** has been filed with the

United States District Court via the ECF system which gives automatic notification to the

following interested parties:


Jeremy Rogers
MONTGOMERY SCARP, PLLC
1218 Third Ave., Suite 2700
Seattle, WA  98101
jeremy@montgomeryscarp.com
Attorneys for Defendant BNSF


AND

Don J. Munro, *Pro Hac Vice*
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001
dmunro@jonesday.com
Attorneys for Defendant BNSF


Executed on June 2d, 2014


<u>s/Lisa Lou Gogal</u>
Lisa Lou Gogal

**Cleveland Stockmeyer PLLC**
8056 Sunnyside Ave. N.
Seattle, WA 98103
(206) 419-4385