UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| MICHAEL HALL, and ELIJAH UBER a/k/a Elijah Hall, and their marital community; and AMIE GARRAND and CAROL GARRAND and their marital community,<br><br>Plaintiffs,<br><br>vs.<br><br>BNSF RAILWAY COMPANY, a Delaware Corporation,<br><br>Defendant. | No.: 2:13-cv-02160-RSM<br><br>**DEFENDANT BNSF RAILWAY COMPANY'S REPLY TO PLAINTIFFS' RESPONSE TO BNSF'S MOTION TO DISMISS**<br><br>NOTE ON MOTION CALENDAR:<br>June 13, 2014 |

## I. INTRODUCTION

The plaintiffs are unable to cite a single statutory provision or case – not one – that says that private employers must provide spousal health care benefits to same-sex couples under Title VII, the Equal Pay Act ("EPA"), or the Employment Retirement Income Security Act ("ERISA"). As we explain in more detail below, the plaintiffs are seeking to legislate entirely new federal rights for same-sex couples. Right or wrong, their arguments should be addressed to Congress, not an Article III court.

BNSF'S REPLY TO RESPONSE TO MOTION TO DISMISS - 1
[Cause No. 2:13-cv-02160-RSM]

**MONTGOMERY SCARP, PLLC**
1218 Third Avenue, Suite 2500
Seattle, Washington 98101
(206) 625-1801/Fax (206)625-1807

## II. ARGUMENT

### A. Plaintiffs' Response to BNSF's Mootness Argument Ignores the Record.

Despite being told repeatedly that the railroad industry's national health care plans were amended as of January 1, 2014, to provide benefits to same-sex couples, plaintiffs continue to insist that there is some doubt about prospective coverage. They argue that "there is no binding agreement here that the conduct may not recur." Dkt. No. 20 at 23. That is not true. The railroads entered into binding agreements with the unions to change the plan terms, and copies of those agreements are in the record as Exhibits 12 and 13 to Mr. Gradia's Declaration. *See* Declaration of A. Kenneth Gradia, Dkt. No. 17, at Exs. 12 & 13.

Aside from the legal technicalities of mootness doctrine, the railroads' voluntary decision to provide spousal benefits to same-sex couples alters the equitable and moral landscape of this case. Throughout their brief, plaintiffs seek to cast the railroad as an anti-gay bigot, arguing that BNSF acted "maliciously" in an effort to enforce a misguided institutional policy against same-sex marriage. Dkt. No. 20 at 19-20, 21. That is an unfair and inaccurate characterization. The reality is that until *Windsor*, federal law permitted – if not encouraged – employer health care plans that excluded same-sex couples. Indeed, prior to *Windsor*, the railroads would have jeopardized their plans' tax status by extending spousal benefits to same-sex couples. *See* IRS Notice 2014-1 at 2. And when the law changed, BNSF and its fellow railroads acted promptly. The *Windsor* decision was handed down on June 26, 2013. *See* 133 S. Ct. 2675, 2682 (2013). The railroads entered into new agreements to provide coverage less than four months later.[1] Dkt. No. 17 at ¶¶ 17-18. This is not, therefore, a case of an employer clinging to unpopular or outdated prejudices.

---

[1] Contrary to plaintiffs' assertions, Dkt. No. 20 at 4, n.3, the decision to change the plans happened well before their lawsuit was filed. Dkt. No. 17 at ¶¶ 16-18.

BNSF'S REPLY TO RESPONSE TO MOTION TO DISMISS - 2
[Cause No. 2:13-cv-02160-RSM]

**MONTGOMERY SCARP, PLLC**
1218 Third Avenue, Suite 2500
Seattle, Washington 98101
(206) 625-1801/Fax (206)625-1807

## B. Title VII Does Not Provide a Cause of Action.

As BNSF has already shown, it is well-settled that distinctions based on sexual orientation are not actionable under Title VII. *DeSantis v. Pacific T. & T. Co.*, 608 F.2d 327, 329-30 (9th Cir. 1979).[2] The point is not, as plaintiffs suggest, that a person's sexual orientation "deprives him of a Title VII claim." Dkt. No. 20 at 12. Rather, the point is that if a difference in treatment is because of sexual orientation, Title VII does not forbid it. In response, plaintiffs and *amicus* Lambda Legal argue that (1) the national plans' former policy regarding same-sex couples reflects "gender stereotyping," (2) the railroad is guilty of discrimination on the basis of "sex plus another factor," and (3) the national plan policy was "based on sex, not sexual orientation" because a homosexual man married to a heterosexual woman would have received spousal benefits. None of these arguments have merit.

### 1. *Gender Stereotyping*

Plaintiffs start with the concept of "gender stereotyping," noting that an employer may be liable for gender discrimination if it requires its employees to act in conformity with traditional conceptions of gender. Dkt. No. 20 at 6-9; *see also*, Dkt. No. 16 at 11 (discussing and distinguishing *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989)). According to the plaintiffs, BNSF required its male employees to act in conformity with the "gender stereotype that requires men to marry women," and vice versa. Dkt. No. 20 at 7. Plaintiffs' argument is flawed in at least two respects.

---

[2] *See also* Dkt. No. 16 at 10, n.3 (collecting cases). Plaintiffs argue that *DeSantis* has been abrogated, but that is true only to the extent that *DeSantis* disapproved of gender stereotyping claims, such as "the stereotype that a man should have a virile rather than an effeminate appearance." *Nichols v. Azteca Restaurants*, 256 F.3d 864, 875 (9th Cir. 2001). The core holding of *DeSantis* – that Title VII does not cover discrimination because of sexual orientation – remains good law. *See Rene v. MGM Grand Hotel, Inc.*, 305 F.3d 1061, 1063 (9th Cir. 2002) (en banc) (an employee's sexual orientation "neither provides nor precludes" a cause of action under Title VII); *id.* at 1070 (same) (Graber, J., concurring).

BNSF'S REPLY TO RESPONSE TO MOTION TO DISMISS - 3
[Cause No. 2:13-cv-02160-RSM]

**MONTGOMERY SCARP, PLLC**
1218 Third Avenue, Suite 2500
Seattle, Washington 98101
(206) 625-1801/Fax (206)625-1807

*First*, the case law is quite clear that gender stereotyping has no application to situations where a difference in treatment is based on sexual orientation itself. The stereotyping line of authority provides that it is unlawful to discriminate against an individual for exhibiting masculine or feminine traits. *Price Waterhouse*, 490 U.S. at 235. More specifically, as the Ninth Circuit has explained, gender stereotyping is discrimination based on appearance or mannerisms, ***not*** an individual's sexual orientation. *See, e.g., Nichols*, 256 F.3d at 870 (male plaintiff harassed "for having feminine mannerisms"). Indeed, under gender stereotyping analysis, sexual orientation is "irrelevant." *Rene*, 305 F.3d at 1063. Thus, when an employer makes distinctions based on sexual orientation, as opposed to observable gender traits, stereotyping law does not "provide . . . a cause of action." *Id.*[3] In this sort of case – where plaintiffs do not allege discrimination based on appearance, mannerisms, or the like – the *DeSantis* rule governs, not the stereotyping cases cited by plaintiffs.

As many other federal courts have recognized, a clear distinction between sexual orientation and gender stereotypes is necessary to avoid "bootstrap[ping] protection for sexual orientation into Title VII." *Dawson v. Bumble & Bumble*, 398 F.3d 211, 218 (2d Cir. 2005).[4] It is "not uncommon for plaintiffs to fall short in their Title VII pursuits because courts find

---

[3] *See also, e.g., Fox v. Shinseki*, 2013 U.S. Dist. LEXIS 113568 at *24-25 (N.D. Cal. Aug 6, 2013) (explaining that under Ninth Circuit precedent, "gender stereotyping, including that based on same-sex stereotyping, is actionable," but "discrimination on the basis of sexual orientation alone is not."); *Iniguez v. Boyd Corp.*, 2009 U.S. Dist. LEXIS 59951 at *22-25 (E.D. Cal. July 14, 2009) (same).

[4] *See also, e.g., Medina v. Income Support Div.*, 413 F.3d 1131,1135 (10th Cir. 2005) (gender stereotyping claim must be dismissed when based on sexual orientation alone, rather than appearance or behavior); *Spearman v. Ford Motor Co.*, 231 F.3d 1080, 1085 (7th Cir. 2000) (plaintiff harassed "because of his apparent homosexuality" did not state claim of discrimination because of "sex stereotypes"); *Vickers v. Fairfield Med. Center*, 453 F.3d 757, 763 (6th Cir. 2006) ("the theory of sex stereotyping under *Price Waterhouse* is not broad enough to encompass" sexual orientation); *Gilbert v. Country Music Association*, 432 Fed. Appx. 516, 519-20 (6th Cir. 2011) (same); *Robertson v. Siouxland Cmty. Health Ctr.*, 938 F. Supp. 2d 831, 841-42 (N.D. Iowa 2013) (same). Even the cases cited by the plaintiffs make this point. *See, e.g., Koren v. Ohio Bell Telephone Co.*, 894 F. Supp. 2d 1032, 1037-38 (N.D. Ohio 2012) (noting that a gender stereotyping claim fails if it relies solely on sexual orientation, as opposed to an allegation that the plaintiff "did not conform to traditional gender stereotypes in any observable way at work.").

BNSF'S REPLY TO RESPONSE TO MOTION TO DISMISS - 4
[Cause No. 2:13-cv-02160-RSM]

**MONTGOMERY SCARP, PLLC**
1218 Third Avenue, Suite 2500
Seattle, Washington 98101
(206) 625-1801/Fax (206)625-1807

their arguments to be sexual orientation … allegations masquerading as gender stereotyping claims." Lex K. Larson, 10 *Employment Discrimination* §168.10[1] (2d ed. 2003). That is exactly what plaintiffs are attempting here by conflating sexual orientation and gender. Their argument that sexual orientation is a "gender stereotype" is just another way of arguing that Title VII should forbid sexual orientation discrimination. Binding Ninth Circuit authority holds that it does not, and that is the end of the matter.

*Second*, even if there were not a clear distinction in the case law between sexual orientation and gender stereotypes, it defies logic to say that a policy of denying benefits to same-sex couples is based on a "gender stereotype." Members of **both** genders exhibit sexual orientation and choose the gender of their marriage partners. In other words, because both genders exhibit sexuality traits – including homosexuality – a spousal benefit policy that excludes same-sex couples is not based on any presumptions about proper gender roles, but rather is solely about sexual orientation itself.[5] Thus, it is unsurprising that plaintiffs are unable to point to any gender stereotyping case involving employer policies that treat same-sex couples less favorably than opposite-sex couples.

### 2. "Sex Plus" and Inter-Racial Marriage Analogies

The plaintiffs also argue (at 10–11) that the railroad health care plans discriminated on "sex plus another factor." For example, plaintiffs cite *Frank v. United Airlines*, where the employer required its female employees (but not its male employees) to maintain a certain weight. 216 F.3d 845 (9th Cir. 2000). Dkt. No. 20 at 10.

---

[5] *See In re Marriage Cases,* 183 P.3d 384, 441 (Cal. 2008) ("limit[ing] benefits to a union of persons of opposite sexes . . . unquestionably imposes different treatment on the basis of sexual orientation."); *cf. also Jespersen v. Harrah's Operating Co*., 444 F.3d 1104, 1111-12 (9th Cir. 2005) (policy that applies equally to men and women does not fit under gender stereotyping doctrine).

BNSF'S REPLY TO RESPONSE TO MOTION TO DISMISS - 5
[Cause No. 2:13-cv-02160-RSM]

**MONTGOMERY SCARP, PLLC**
1218 Third Avenue, Suite 2500
Seattle, Washington 98101
(206) 625-1801/Fax (206)625-1807

Again, these cases are inapposite. Neither male nor female employees covered by the national plans received coverage for same-sex spouses. It is the difference in treatment between men and women that animates *Frank* and similar cases. *Id*. at 854 (finding that policy "applied less favorably to one gender"); *see also Sprogis v. United Airlines*, 444 F.2d 1194, 1198 (7th Cir. 1971) (policy forbidding marriage applied only to female employees). If the plans had offered benefits to the same-sex spouses of male employees, but not female employees, that would have been sex discrimination. But that was not what the railroads did.

Plaintiffs also analogize to cases in which prohibitions on interracial marriage have been held to be illegal race discrimination. However, anti-miscegenation rules were struck down because they are "measures designed to maintain White Supremacy." *Loving v. Virginia*, 388 U.S. 1, 11 (1967). Such practices reflect an invidious prejudice against association between majority and minority racial groups, and so it is no surprise that they violate Title VII's prohibition on race discrimination. *See, e.g., Floyd v. Amite County School Dist.*, 581 F.3d 244, 250 (5th Cir. 2009) (noting that "association cases are predicated on animus against the employee because of his association with persons of another race").

It makes no sense to apply anti-miscegenation or associational discrimination concepts to policies regarding same-sex couples, and no court has ever done so. *See Partners Healthcare Sys. v. Sullivan*, 397 F. Supp. 2d 29, 39 (D. Mass. 2007) (noting that theory "proves too much"). Mr. Hall was not disadvantaged for associating with women, which would be the parallel to the race cases cited by plaintiffs. *See Gallo v. W.B. Mason Co.*, 2010 U.S. Dist. LEXIS 125193 (D. Mass. Nov. 15, 2010) (plaintiff failed to allege any discrimination based on association with opposite gender). Nor can it be said that the railroads' former policy was "a measure designed to maintain [Male] Supremacy" (or vice versa).

BNSF'S REPLY TO RESPONSE TO MOTION TO DISMISS - 6
[Cause No. 2:13-cv-02160-RSM]

**MONTGOMERY SCARP, PLLC**
1218 Third Avenue, Suite 2500
Seattle, Washington 98101
(206) 625-1801/Fax (206)625-1807

### 3. Plaintiffs' Proposed Comparisons Do Not Show Any Differential Treatment of Men and Women.

Plaintiffs also deny that the spousal benefit policy at issue was based on sexual orientation at all. More specifically, plaintiffs contend that the policy must have been "based on sex, not sexual orientation" because a homosexual man married to a heterosexual woman would have received spousal benefits. Dkt. No. 20 at 10. However, the same would be true of a homosexual woman married to a heterosexual male. *See In re Marriage Cases*, 183 P.3d at 441 ("it is sophistic" to suggest that different treatment of same-sex couples was not based on sexual orientation because "a gay man or lesbian [could] marry someone of the opposite sex"). Thus, here again, men and women were treated exactly the same.

It is worth re-emphasizing, in this regard, that plaintiffs' theory in this case suffers from a failure to compare similarly situated individuals. Plaintiffs want the Court to compare Mr. Hall to married female employees, arguing that they received the spousal benefit when he did not. But plaintiffs admit that not all married female employees received spousal benefits – only heterosexual females qualified. Females, who, like Mr. Hall, were in same-sex relationships, did not receive the benefit. Thus, when Mr. Hall is compared to similarly situated employees of the opposite gender, there was no differential treatment.

In short, it is passing strange to say that a man and a woman who were treated the same way have both been victims of sex discrimination. The plaintiffs, without the slightest trace of irony, accuse BNSF (at 14) of being an "equal opportunity discriminator," evidently unaware of the contradiction in terms. Such solecisms and contortions are necessary because plaintiffs must write around the more plainly stated reality: they were treated differently only because of their sexual orientation. Title VII does not forbid that, and this Court should decline the invitation to go where Congress has not.

BNSF'S REPLY TO RESPONSE TO MOTION TO DISMISS - 7
[Cause No. 2:13-cv-02160-RSM]

**MONTGOMERY SCARP, PLLC**
1218 Third Avenue, Suite 2500
Seattle, Washington 98101
(206) 625-1801/Fax (206)625-1807

### C. Plaintiffs Admit That Their Equal Pay Act Claim is Derivative of Their Title VII Theory.

As BNSF explained in its opening brief, plaintiffs' Equal Pay Act ("EPA") claim fails for the same reasons they cannot state a claim under Title VII. Dkt. No. 16 at 12-13. Plaintiffs agree that their EPA claim is "co-extensive" with their Title VII theory, and thus tacitly admit that the same analysis applies to both. Dkt. No. 20 at 15-16.

To be sure, plaintiffs again insist – as they did with respect to their Title VII claim – that their EPA claim is not properly viewed as a question of sexual orientation discrimination, but rather alleges that men and women were compensated differently on the basis of their sex. *Id.* at 16. But once again, plaintiffs have not alleged any way in which men and women were treated differently on the basis of gender, as distinguished from sexual orientation. As discussed above, sexual orientation is not a characteristic unique to one gender, but rather is a trait of both. Distinctions based solely on sexual orientation therefore do not, as a matter of law or logic, constitute gender discrimination under the EPA.

### D. Plaintiffs Admit that Preemption of Their State Law Discrimination Claim Turns on Resolution of the Title VII Issue.

Plaintiffs' Third Cause of Action arises under Washington state law. Dkt. No. 8, ¶¶ 120-22. BNSF has argued that this claim is preempted by ERISA. Dkt. No. 16 at 14-16. As shown in BNSF's earlier filing, ERISA preempts state laws that would prohibit plan terms or practices that are lawful under federal law. *Shaw v. Delta Air Lines*, 463 U.S. 85, 90 (1983). Plaintiffs' only response is to assert, yet again, that a policy of denying benefits to same-sex spouses violates Title VII and the EPA. Dkt. 20 at 16-17. Thus, the parties apparently agree that whether the state law count is preempted turns on whether the railroads' national health care plans complied with federal law.

BNSF'S REPLY TO RESPONSE TO MOTION TO DISMISS - 8
[Cause No. 2:13-cv-02160-RSM]

**MONTGOMERY SCARP, PLLC**
1218 Third Avenue, Suite 2500
Seattle, Washington 98101
(206) 625-1801/Fax (206)625-1807

### E. Plaintiffs Fail to Demonstrate an ERISA Claim That is Independent of the Meaning of the Collectively-Bargained Plan.

Next, plaintiffs turn to a defense of their ERISA cause of action. Dkt. No. 20 at 17-22. In response to BNSF's argument that the claim is subject to arbitration under the Railway Labor Act ("RLA") because it would require interpretation of collectively-bargained language, plaintiffs insist that their claim is actually "rooted in rights outside of the terms of the plan." *Id.* at 18. They point, in particular, to (1) ERISA's protection against interference with plan benefits, (2) ERISA's fiduciary duty provisions, and (3) the U.S. Constitution. *Id.* at 18-22. None of these arguments are valid.

*1. Section 510 of ERISA*

First, plaintiffs argue that they have stated a claim under § 510 of ERISA for interference or discrimination against "one seeking attainment of rights under a plan." *Id.* at 18. According to plaintiffs, the Amended Complaint alleges that Mr. Hall and Ms. Garrand "***had attained vested rights to coverage*** under the plan providing the benefit to '[y]our husband or wife'; but then BNSF interfered with this benefit." *Id.* at 19 (emphasis added).

By asserting that Mr. Hall and Ms. Garrand "had attained vested rights," plaintiffs are just assuming the conclusion. The whole point of BNSF's RLA argument is that there is a predicate issue to be decided in arbitration: did the national plans, as written, provide benefits to same-sex spouses or not? If the plans did not provide the benefit, then by definition there was no "interference" with benefits under § 510. *See Long v. Flying Tiger Inc.*, 994 F.2d 692, 695 (9th Cir. 1993) (explaining that cases arising under § 510 "are distinguishable" from a case involving interpretation of plan terms because "the question whether an employer is interfering with the attainment of rights . . . is a separate issue from the nature of those rights once they are attained by an employee.").

BNSF'S REPLY TO RESPONSE TO MOTION TO DISMISS - 9
[Cause No. 2:13-cv-02160-RSM]

**MONTGOMERY SCARP, PLLC**
1218 Third Avenue, Suite 2500
Seattle, Washington 98101
(206) 625-1801/Fax (206)625-1807

## 2. Fiduciary Duty

Plaintiffs' fiduciary duty argument suffers from the same problem. Once again taking considerable creative license, the plaintiffs assert that the Amended Complaint implicitly alleges that BNSF breached its fiduciary duty to act "solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits," in violation of § 1104(a).[6] Dkt. No. 20 at 19. Even if that allegation could be found in the Amended Complaint, plaintiffs are once again assuming that they were entitled to spousal benefits under the terms of the plans. *Id.* at 20 (asserting that BNSF "rewrote plan terms"). By definition, BNSF did not breach any alleged fiduciary duty to the plaintiffs by denying the benefit if the national health care plans did not require spousal benefits for same-sex couples in the first place. *See, e.g., Roe v. Empire Blue Cross Blue Shield*, 2014 U.S. Dist. LEXIS 61345 at *25-28 (S.D.N.Y. May 1, 2014) (rejecting fiduciary duty claim brought by same-sex couple seeking health care benefits under employer's ERISA plan). In other words, the plaintiffs' ERISA claim – even if cast in terms of "fiduciary duty" – cannot be resolved without first determining whether they were entitled to benefits under the terms of the relevant plans.

Plaintiffs also make a related argument that "fact issues as to an employer's motives or conduct are heard in court, not RLA arbitration." Dkt. No. 20 at 21. But BNSF is not arguing that its "motives" or "conduct" must be decided by an arbitrator. Rather, the question that would have to be resolved in arbitration is whether the national plans' original references to "your husband or wife" were intended to include same-sex spouses. That question cannot be divorced from any ERISA theory that plaintiffs have asserted.

---

[6] Contrary to plaintiffs' current assertions, the Amended Complaint does not allege that BNSF breached a fiduciary duty owed to the plaintiffs. Similarly, the Amended Complaint does not mention § 510 of ERISA or any "interference" with benefits.

BNSF'S REPLY TO RESPONSE TO MOTION TO DISMISS - 10
[Cause No. 2:13-cv-02160-RSM]

**MONTGOMERY SCARP, PLLC**
1218 Third Avenue, Suite 2500
Seattle, Washington 98101
(206) 625-1801/Fax (206)625-1807

### 3. U.S. Constitutional Claims

Plaintiffs also contend that their ERISA claim does not depend on interpretation of plan terms because it is "grounded" in the Equal Protection Clause of the U.S. Constitution. Dkt. No. 20 at 20-21. Plaintiffs cite the Supreme Court's decision in *U.S. v. Windsor*, 133 S. Ct. 2675, 2682 (2013), noting that it struck down the rule requiring the term "marriage" in any federal law to be defined as an opposite-sex couple. From there, plaintiffs leap to the conclusion that under *Windsor*, the plaintiffs "enjoy a substantive protection in the U.S. constitution" that requires the health care plans at issue to provide benefits to same-sex couples. Dkt. No. 20 at 21.

To the extent that plaintiffs are claiming that *Windsor* means that ERISA now requires health care plans to provide benefits to same sex spouses, they are clearly wrong.[7] It is well-settled that ERISA "does not regulate the substantive content of welfare-benefit plans." *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 732 (1985). Thus, "ERISA does not mandate that employers provide any particular benefits, and does not itself proscribe discrimination in the provision of employee benefits." *Shaw v. Delta Air Lines*, 463 U.S. 85, 90 (1983). Accordingly, even if *Windsor* changes the definitions of "marriage" or "spouse" under ERISA, it is still true that nothing in ERISA prohibits a private employer from continuing to restrict spousal benefits to opposite-sex couples. *See Empire Blue Cross*, 2014 U.S. Dist. LEXIS at *15-*18, *21-*24 (rejecting the argument that *Windsor* now requires ERISA health care plans to provide benefits to same-sex couples).

---

[7] *Windsor* does not, of course, have any direct application to private conduct. It says absolutely nothing about whether private employers must provide health care benefits to same sex couples. Indeed, the Court's holding was grounded in the due process and equal protection guarantees of the Fifth Amendment, which does not regulate private conduct. *See, e.g., Shelley v. Kraemer*, 334 U.S. 1, 13 (1948). Plaintiffs have not alleged that BNSF is a state actor, and thus they have no basis to assert constitutional rights against the railroad itself.

BNSF'S REPLY TO RESPONSE TO MOTION TO DISMISS - 11
[Cause No. 2:13-cv-02160-RSM]

**MONTGOMERY SCARP, PLLC**
1218 Third Avenue, Suite 2500
Seattle, Washington 98101
(206) 625-1801/Fax (206)625-1807

Nor does the plaintiffs' argument find any support in the decision in *Cozen O'Connor v. Tobits*, 2013 WL 3878688 (E.D. Pa. July 29, 2013). As plaintiffs acknowledge, the issue in that case was whether the federal government – not a private entity – must interpret the undefined term "spouse" in an ERISA pension plan to include lawfully married same-sex couples. *Id.* at *20. That is a completely different question than how a private plan administrator is required to set or interpret plan terms. *See Empire Blue Cross*, 2014 U.S. Dist. LEXIS at *20-21 (distinguishing *Tobits*). Moreover, the issue in *Tobits* turned on interpretation of the statutory spousal benefit provisions for pension plans under § 1055 of ERISA. *See* 29 U.S.C. § 1055(a)(2) (requiring survivorship provisions for spouses of plan participants). There are no comparable provisions in ERISA for welfare benefit plans. *See* 29 U.S.C.§ 1051(1) (providing that provisions for participation and vesting do not apply to welfare benefit plans). This is a case of plan interpretation, not statutory interpretation. Thus, for multiple reasons, the *Tobits* case is inapposite here.[8]

## V. CONCLUSION

For the foregoing reasons, as well as the reasons stated in BNSF's opening brief, the First Amended Complaint should be dismissed under Federal Rule 12(b)(1) and Federal Rule 12(b)(6).[9]

---

[8] *Tobits* acknowledges that "[p]rior to the Court's decision in *Windsor*, under the plain language of ERISA, the Code, and the Plan at issue in this case, qualified retirement plans were under no obligation to provide benefits to same-sex Spouses." 2013 WL 3878688 at *19. In fact, that is still true. To the extent that *Windsor* changed ERISA plans, it did so only indirectly, by incentivizing retirement plans subject to ERISA to modify their terms to continue to qualify for favorable federal tax treatment. *See* IRS Notice 2014-19 (April 4, 2014). The IRS has given qualified retirement plans until December 31, 2014 to change their terms. *Id.* The IRS has not issued any similar guidance for multi-employer welfare benefit plans. *Cf.* IRS Notice 2014-1 (Dec. 16, 2013) (discussing application of *Windsor* to cafeteria benefit plans and noting that plans "may" permit mid-year changes).

[9] As noted in Lambda Legal's motion for leave to file, Dkt. No. 29, BNSF does not oppose the request to submit an *amicus* brief. Lambda Legal is making essentially the same arguments as the plaintiffs, and so the rebuttal arguments set forth above are intended to serve as a response to Lambda's brief as well as the plaintiffs'.

BNSF'S REPLY TO RESPONSE TO MOTION TO DISMISS - 12
[Cause No. 2:13-cv-02160-RSM]

**MONTGOMERY SCARP, PLLC**
1218 Third Avenue, Suite 2500
Seattle, Washington 98101
(206) 625-1801/Fax (206)625-1807

DATED this 13th day of June, 2014.

| | |
|---|---|
| **MONTGOMERY SCARP, PLLC** | **JONES DAY** |
| ___s/ Jeremy Rogers_____ | ___s/ Donald J. Munro_____ |
| Jeremy Rogers, WSBA No. 36292 | Donald J. Munro (admitted *pro hac vice*) |
| 1218 Third Avenue, Suite 2700 | 51 Louisiana Avenue, N.W. |
| Seattle, WA 98101 | Washington, D.C. 20001 |
| Telephone: (206) 625-1801 | Telephone: (202) 879-3939 |
| Facsimile: (206) 625-1807 | Facsimile: (202) 626-1700 |
| E-mail: jeremy@montgomeryscarp.com | E-mail: dmunro@jonesday.com |
| **Attorneys for Defendant BNSF** | **Attorneys for Defendant BNSF** |

BNSF'S REPLY TO RESPONSE TO MOTION TO DISMISS - 13
[Cause No. 2:13-cv-02160-RSM]

**MONTGOMERY SCARP, PLLC**
1218 Third Avenue, Suite 2500
Seattle, Washington 98101
(206) 625-1801/Fax (206)625-1807

# CERTIFICATE OF SERVICE

I hereby certify that true and complete copies of *Defendant BNSF's Reply to Plaintiffs' Response to Defendant BNSF's Motion to Dismiss* have been filed with the United States District Court via the ECF system which gives automatic notification to the following interested parties:

| | |
|---|---|
| Cleveland Stockmeyer | Duncan C. Turner |
| Cleveland Stockmeyer, PLLC | Badgley Mullins Turner, PLLC |
| 8056 Sunnyside Avenue North | 701 Fifth Avenue, Suite 4750 |
| Seattle, Washington 98103 | Seattle, Washington 98104 |
| Telephone: (206) 419-4385 | Telephone: (206) 621-6566 |
| E-mail:cleve@clevelandstockmeyer.com | E-mail: duncanturner@badgleymullins.com |
| **Attorneys for Plaintiffs** | **Attorneys for Plaintiffs** |
| | |
| Jennifer C. Pizer | Tara L. Borelli |
| Lambda Legal Defense & Education Fund, Inc. | Gregory R. Nevins |
| | Lambda Legal Defense & Education Fund, Inc. |
| 4221 Wilshire Boulevard, Suite 280 | |
| Los Angeles, California 90010 | 730 Peachtree Street NE, Suite 1070 |
| Telephone: (213) 382-7600 | Atlanta, Georgia 30308 |
| E-mail: jpizer@lambdalegal.org | Telephone: (404) 897-1880 |
| **Attorneys for Amicus Curiae** | E-mail: tborelli@lambdalegal.org |
| | E-mail: gnevins@lambdalegal.org |
| | **Attorneys for Amicus Curiae** |

Jennifer S. Divine
Miller Nash LLP
601 Union Street, Suite 4400
Seattle, Washington 98101
Telephone: (206) 622-8484
E-mail: Jennifer.divine@millernash.com
**Attorneys for Amicus Curiae**

DATED this 13th day of June, 2014, at Seattle, Washington.

            s/ Kaitlyn Donahoe_____
            Kaitlyn Donahoe, Paralegal

BNSF'S REPLY TO RESPONSE TO MOTION TO DISMISS - 14
[Cause No. 2:13-cv-02160-RSM]

**MONTGOMERY SCARP, PLLC**
1218 Third Avenue, Suite 2500
Seattle, Washington 98101
(206) 625-1801/Fax (206)625-1807